IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE BOARD OF EDUCATION OF
THE COUNTY OF MARSHALL,

        Plaintiff,

v.                                          Civil Action No. 5:09CV58
                                                           (STAMP)
J.A., a minor, MARK A. and
FRAN A., parents of J.A.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**[1]

I.  Procedural History

In November 2008, the defendants in the above-styled civil
action requested a due process hearing with the Local Education
Agency ("LEA")[2] because it was their belief that the plaintiff, the
Board of Education of Marshall County ("BOE"), was not providing
their son, J.A., with a free appropriate public education ("FAPE")
pursuant to the Individuals with Disabilities Education Act
("IDEA"), 20 U.S.C. § 1400 et seq., and the West Virginia Code of
State Regulations Title 126 Series 16 (2419).  Since April 2006,

---

[1]The plaintiff in this case only appeals the hearing officer's
due process decision, not the defendants' counterclaim filed on
July 30, 2009.  Thus, the plaintiff's motion is one for partial
summary judgment.

[2]Marshall County Schools is the LEA responsible for ensuring
that each disabled child within its jurisdiction receives a FAPE.
LEA is defined as "a public board of education or other public
authority legally constituted within a State for either
administrative control or direction of . . . public elementary
schools or secondary schools in a city, county, township, school
district, or other political subdivision of a State as an
administrative agency for its public elementary schools or
secondary schools."  20 U.S.C. § 1401(19)(A).

J.A., who is diagnosed with autism spectrum disorder[3], had been enrolled at Augusta Levy Learning Center ("ALLC") in Wheeling, West Virginia -- a private school devoted to teaching autistic children. In the fall of 2007, the defendants began working with the LEA to develop an Individualized Education Program ("IEP") for J.A. The defendants ultimately rejected the proposed IEP prepared by the LEA, citing concerns about its methodology, and kept J.A. enrolled at ALLC. A due process hearing was held on February 17 and 18, 2009 through the West Virginia Department of Education's Office of Assessment and Accountability. The impartial hearing officer ("IHO") issued a decision ordering the plaintiff to reimburse the defendants for tuition and expenses associated with J.A.'s attendance at ALLC from January 2008 through August 2009.[4] On May 29, 2009, the BOE appealed the decision of the IHO to this Court. The BOE seeks a reversal of the IHO's decision by way of a motion for partial summary judgment, which is currently pending before this Court.

## II.  Facts

Born on January 19, 2004, J.A. is a seven-year-old boy diagnosed with autism spectrum disorder. According to J.A.'s

---

[3]J.A.'s autism is also described in the records as Pervasive Development Disorder, Not Otherwise Specified (PDD-NOS). (Hr'g Officer Findings of Fact at 2).

[4]The IHO issued findings of fact, conclusions of law, and order on April 24, 2009, concluding that the plaintiff had failed to provide J.A. with a FAPE because, in his belief, the plaintiff did not develop an IEP that met J.A.'s educational needs.

treating physician and psychologist, Dr. Eric M. Butter, his condition manifests itself as repetitive and restrictive behaviors, learning impairments, and inattentiveness. J.A. regularly receives treatment for autism at Nationwide Children's Hospital in Columbus, Ohio, and he has been enrolled at ALLC since the age of two. At ALLC, J.A. receives thirty to forty hours per week of Applied Behavioral Analysis ("ABA") using Discrete Trial Instruction ("DTI").[5] J.A. lives with his parents in Marshall County, West Virginia and because of his disabilities, he is eligible to receive special education and related services under the IDEA from the LEA. Special education and related services are delivered to children like J.A. through an IEP, which is developed by a multi-disciplinary team composed of representatives from the child's school, the LEA, the parents, and in some cases the child himself. 20 U.S.C. § 1414(d)(1)(B).

The LEA formed an IEP team to consider J.A.'s program and placement for the 2008-2009 school year. The IEP team observed J.A. at ALLC, reported its findings regarding J.A.'s educational performance to J.A.'s parents, conducted a meeting, and determined that J.A. should be placed exclusively in special education. The IEP also determined the location of the placement was to be Park View Elementary School in Moundsville, West Virginia. At the IEP

---

[5]ABA is a method used to treat autism in children. DTI is one aspect of the ABA program. The SCERTS method is another technique used in autism education. The SCERTS method focuses on "social communication, emotional regulation, and transactional support."

meeting, neither the parents nor their advocates objected to the IEP, except that J.A.'s parents questioned the SCERTS methodology to be used by the LEA.

J.A.'s parents preferred that J.A. continue to receive ABA using DTI at ALLC as opposed to the SCERTS method that the LEA uses to educate students with autism in public schools. After receiving written notice from Principal Jane Duffy indicating when the IEP would start and setting forth transition dates from ALLC to the public school system, J.A.'s parents rejected the IEP, again citing concerns about the SCERTS method. J.A.'s parents then entered into another non-cancelable contract with ALLC for the 2008-2009 school year. On November 13, 2008, J.A.'s parents filed a request for an impartial due process hearing with the West Virginia Department of Education's Office of Assessment and Accountability, and the administrative hearing was conducted on February 17-18, 2009.

During the hearing, numerous witnesses who qualified as experts in various areas related to autism instruction testified that the IEP developed for J.A. was designed to confer meaningful educational benefits and that the public school system offered a more functional environment than ALLC.[6] Other experts who

---

[6]The following professionals testified that the IEP conferred meaningful educational benefit upon J.A.: (1) Suzanne Varner, a preschool special needs teacher for the LEA; (2) Robert Bartlett, an autism teacher with the LEA; (3) Cecilia Irvin, an autism consultant with the LEA; (4) Dr. Fred Jay Krieg, an expert in school psychology; and (5) Dr. Katherine Calabria, professor of education at Franciscan University of Steubenville, Ohio. The following witnesses were qualified as experts at the due process hearing: (1) Suzanne Varner, qualified as an expert in special

testified on behalf of J.A. stated that ABA using DTI is the optimal method for educating autistic students.[7]  The hearing officer issued his findings of fact, conclusions of law, and order on April 24, 2009, concluding that the IEP did not meet J.A.'s educational needs and that the LEA therefore failed to provide J.A. with a FAPE.  The hearing officer also concluded that J.A.'s placement at ALLC was appropriate under the IDEA and ordered the LEA to reimburse J.A.'s parents for the cost of the private school tuition from January 2008 through August 2009.  The BOE appealed this decision to this Court pursuant to 20 U.S.C. § 1415(i)(2)(A).

## III.  Applicable Law

The IDEA provides any party aggrieved by a decision reached at a due process hearing of the state educational agency with a right to bring a civil action in a United States district court.  20 U.S.C. § 1415(i)(2).  In reviewing the complaint, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall

---

education; (2) Robert Bartlett, qualified as an expert in special education and autism instruction; (3) Dr. Eric Butter, qualified as an expert in the field of pediatric psychology; (4) Dr. Fred Jay Krieg, qualified as an expert in school psychology; (5) Dr. Katherine Calabria, qualified as an expert in the area of school psychology, special education programming, and autism and special education; and (6) Dr. John Howard Hull, qualified as an expert in the area of experimental psychology whose testimony was limited to the concept of research-based methodology.

[7]Dr. Eric M. Butter and Dr. John Howard Hull testified on behalf of J.A. and indicated their preference for the ABA using the DTI instruction method.

grant such relief as the court determines appropriate." 20 U.S.C. § 1415(i)(2)(C). Accordingly, a reviewing court may grant summary judgment based on the administrative record of the hearing. Hogan v. Fairfax Cnty. Sch. Bd., 645 F. Supp. 2d 554, 561 (E.D. Va. 2009).

A court reviewing an administrative decision under the IDEA is "obliged to conduct a modified de novo review, giving 'due weight' to the underlying administrative proceedings." MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 530-31 (4th Cir. 2002) (internal quotations omitted). However, the courts may not "substitute their own notions of sound educational policy for those of the school authorities which they review." Hartmann by Hartmann v. Loudoun Cnty. Bd. of Educ., 118 F.3d 996, 1000 (4th Cir. 1997) (quoting Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982)). Once the reviewing court has given the administrative findings due weight, it is then "free to decide the case on the preponderance of the evidence, as required by the statute." Doyle v. Arlington Cnty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991).

While the district court makes an independent decision based on a preponderance of the evidence, if the court chooses not to follow the administrative factual findings, it is required to explain the reason for not doing so. A.B. v. Lawson, 354 F.3d 315, 325 (4th Cir. 2004). The principle of giving "due weight" to the administrative findings "reflect[s] the IDEA's recognition that

federal courts cannot run local schools. Local educators deserve latitude in determining the individualized education program most appropriate for a disabled child. The IDEA does not deprive these educators of the right to apply their professional judgment." Hartmann, 118 F.3d at 1001; see also Springer v. Fairfax Cnty. Sch. Bd., 134 F.3d 659, 663 (4th Cir. 1998).

In evaluating the administrative findings, findings of fact which are "regularly made" are taken to be prima facie correct and a reviewing court that fails to adhere to the factual findings of the agency must explain its deviation. Doyle, 953 F. 2d at 105. In determining whether such factual findings were "regularly made," a reviewing court "should examine the way in which the state administrative authorities have arrived at their administrative decisions and the methods employed." Id.; see also Cnty. Sch. Bd. of Henrico Cnty., Va. v. Z.P. ex rel. R., 399 F.3d 298, 305 (4th Cir. 2005) ("Factual findings are not 'regularly made' if they are reached through a process that is 'far from the accepted norm of a fact-findings process.'") (quoting Doyle, 953 F.2d at 104).

## IV. Discussion

The central issues at the administrative hearing and in this civil action are whether the parents' decision to place J.A. in a private facility was proper under the IDEA and whether the parents are entitled to reimbursement for the private placement. J.A.'s parents claim that the IEP developed by the LEA was insufficient to meet their son's needs because it utilizes the SCERTS methodology.

Accordingly, they seek reimbursement for their expenses at ALLC on the ground that the ABA using DTI method utilized at ALLC is necessary for J.A. to attain a FAPE. The BOE, however, argues that the IEP is adequate to meet J.A.'s educational needs and thus the parents should not be reimbursed for their tuition expenses at ALLC.[8] Before addressing the parties' arguments, this Court first discusses the burden of proof.

A. Burden of Proof

The United States Court of Appeals for the Fourth Circuit has stated that the party aggrieved by the hearing officer must properly bear the burden of proving that the administrative decision was erroneous. See Barnett v. Fairfax Cnty. Sch. Bd., 927 F.2d 146, 152 (4th Cir. 1991); see also Bd. of Educ. v. I.S., 325 F. Supp. 2d 565, 578 (D. Md. 2004) ("As the party challenging the administrative findings, [the plaintiff] bears the burden of proof of establishing a violation of the IDEA."). Accordingly, in the action before this Court, the BOE bears the burden of proving that the hearing officer's decision was erroneous. Specifically, the BOE must prove that J.A.'s IEP was reasonably calculated to provide him with a FAPE under the IDEA. If the Board meets its burden of

_____

[8]In its proposed findings of fact and conclusions of law, the BOE argues that an analysis regarding reimbursement cannot properly be undertaken in this case because the parents never enrolled J.A. in the school district. 20 U.S.C. § 1412(a)(10)(C)(ii). However, the BOE seems to have abandoned this argument in its motion for partial summary judgment.

8

proving that the IEP was adequate, then the inquiry is finished; it does not matter whether the ALLC program was also appropriate or helpful because the Board already met its obligation under the law. See Bd. of Educ. of the Cnty. of Kanawha v. Michael M., 95 F. Supp. 2d 600, 604-05 (S.D. W. Va. 2000). However, if the BOE fails to meet its burden of proof, the burden then shifts to the parents to prove that the ALLC was appropriate under the IDEA. For the reasons described below, this Court finds that the BOE has carried its burden of proving that J.A.'s IEP was adequate to provide him with a FAPE under the IDEA.

B.   Free Appropriate Public Education

The IDEA requires public schools to provide every disabled child a FAPE designed to meet the unique needs of that child. 20 U.S.C. § 1400(d)(1)(A). A FAPE is statutorily defined as:

> [S]pecial education and related services that -
>
> (A)  have been provided at public expense, under public supervision and direction, and without charge;
>
> (B)  meet the standards of the State educational agency;
>
> (C)  include an appropriate public preschool, elementary, or secondary school education in the State involved; and
>
> (D)  are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).[9]  The Supreme Court has established a two-part

test for determining whether a child is receiving a FAPE:

> First, has the State complied with the procedures set
> forth in the Act?  And second, is the individualized
> education program developed through the Act's procedures
> reasonably calculated to enable the child to receive
> educational benefits?  If these requirements are met, the
> State has complied with the obligations imposed by
> Congress and the courts can require no more.

Rowley, 458 U.S. at 206-07.  According to the Supreme Court, "a

school district's educational program is adequate so long as the

program is reasonably calculated to confer some educational

benefit." Michael M., 95 F. Supp. 2d at 606-07.  This requirement

is accomplished through the mandate that each disabled child have

an IEP.  Rowley, 458 U.S. at 207.  The IEP must be implemented in

the least restrictive environment that is appropriate for the

child.  20 U.S.C. § 1412(a)(5)(A).  Where possible, the least

restrictive environment should be in the public schools.  Sch.

Committee of Town of Burlington v. Dept. of Educ. of Mass., 471

U.S. 359, 369 (1985).

The IDEA, however, does not require "the furnishing of every

special service necessary to maximize each handicapped child's

potential." Rowley, 458 U.S. at 199.  Instead, school districts

---

[9]This Court notes that Congress did not change the IDEA's
definition of a FAPE when it enacted No Child Left Behind ("NCLB").
20 U.S.C. § 1401(9); see Kirby v. Cabell Cnty. Bd. of Educ., Nos.
3:05-0322, 3:03-0320, 2006 WL 2691435, at *6 (S.D. W. Va. Sept. 19,
2006) (holding that there is "no language in [NCLB] that places
additional obligations on the development or assessment of a
child's IEP.").

are merely required to provide a "basic floor of opportunity" to every child with a disability. <u>Rowley</u>, 458 U.S. at 200; <u>see also</u> <u>M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.</u>, 553 F.3d 315, 328 (4th Cir. 2009) ("[T]he IDEA does not require a perfect education."); <u>Shaw v. District of Columbia</u>, 238 F. Supp. 2d 127, 139 (D.D.C. 2002) ("Although the IDEA guarantees a [FAPE], it does not, however, provide that this education will be designed according to the parent's desires.") (internal citations omitted). Only when a FAPE is not provided to a disabled student may the parents place the child in a private school and seek reimbursement for the LEA. <u>See</u> <u>Town of Burlington</u>, 471 U.S. at 369-70. Specifically, the IDEA states:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii). Parents are entitled to reimbursement for unilaterally placing their child in a private school "only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." <u>Florence Cnty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 12-13 (1993). Thus, parents who unilaterally place

their child in a private school "do so at their own financial risk." Id. (internal citation omitted).

In this case, J.A.'s autism presents a challenge when defining the concept of "educational benefit" for purposes of determining whether he is receiving a FAPE. "To determine whether an autistic child is received a [FAPE], the court must examine the IEP to determine whether it is reasonably calculated to provide benefit in academic areas and non-traditional areas critical to the child's education[,]" which is not easily quantified. Michael M., 95 F. Supp. 2d at 607 (citing Sharon C. Streett, The Individuals with Disabilities Education Act, 19 U. Ark. Little Rock L.J. 35, 45, (1996)). Despite the difficulty in comparing Rowley to J.A.'s situation, this Court applies the two-part test set forth by the Supreme Court to determine whether the Board's IEP was consistent with its obligations under the IDEA.

1.  Procedural Requirements of the IDEA

In its motion for partial summary judgment, the BOE argues that it meticulously adhered to the IDEA's procedural requirements in developing the IEP for J.A. In response, the defendants highlight certain facts that the LEA failed to include in the IEP, specifically, that J.A. was in a full leg cast during the observation day at the ALLC, which negatively impacted J.A.'s levels of performance. According to the defendants, this omission was an attempt to downplay J.A.'s levels of performance and

12

independent living skills acquired at the ALLC. The defendants also claim that the LEA incorrectly stated that J.A. attempted "consonant-vowel" combinations when he was actually attempting "consonant-vowel-consonant" combinations, and that the LEA did not request any documents or records from ALLC. The defendants acknowledge that the LEA teachers are qualified experts in special education programming, but argue that these teachers are not adequately trained in the methodologies to be used under the IEP.

The IDEA requires that the IEP team develop a plan that includes the following: (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how to measure the child's progress toward meeting the annual goals; and (4) a statement describing the special education and related services to be provided. 20 U.S.C. § 1414(d)(1)(A). A hearing officer may find that a child failed to receive a FAPE for procedural violations only if the procedural inadequacies: (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE; or (3) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii).

This Court has read the transcript of the due process hearing and reviewed the other records and finds that in this case, all of the IDEA's IEP requirements were met, and none of the three

impediments or deprivations occurred. The parents cite to alleged deficiencies in the IEP in their due process complaint, but failed to present any evidence in support of these allegations at the hearing. In particular, the parents claimed that the IEP was not sufficiently individualized and that the annual goals and objectives were inadequate, but after reviewing the record, it is clear to this Court that a preponderance of the evidence supports the finding that the IEP was individualized -- the goals and objectives of both J.A.'s parents and ALLC were incorporated into the IEP. Additionally, both Cecilia Irvin and Dr. Katherine Calabria testified that the IEP was individualized, targeting the skills that J.A. would need. Not only did the LEA attach a document regarding J.A.'s present levels of achievement, goals and objections prepared by his parents to the proposed IEP, but the LEA also incorporated the goals suggested by J.A.'s parents. (Hr'g Officer Findings of Fact at 4.) J.A.'s parents and their counsel actively participated at the IEP hearing and provided recommendations. Moreover, numerous changes to the IEP were made at the parents' request. Finally, the hearing officer did not make any findings of fact or conclusions of law that the IEP was procedurally deficient.

In their response to the motion for partial summary judgment, the defendants question the opinions of the plaintiff's expert witnesses and highlight alleged omissions and inaccuracies. The

defendants, however, fail to provide any proof of a procedural defect that would indicate that the LEA failed to comply with the IDEA. The IEP's failure to mention J.A.'s leg cast and the misstatement of the phrase "consonant-vowel" do not prejudice J.A.'s ability to educationally benefit under the IEP, and certainly do not rise to the level of a procedural defect. Even if the IEP team had created a procedurally deficient IEP, that deficiency must actually prejudice J.A.'s ability to receive a FAPE before it can be deemed to fail him. In this case, the LEA met its procedural obligations under the IDEA because it never caused J.A. to lose educational opportunity and because the defendants fully participated in the development of the IEP. A preponderance of the evidence shows that the LEA did not violate J.A.'s procedural rights.

     2.   <u>Meaningful Educational Benefit</u>

This Court now turns to step two of the <u>Rowley</u> test. The plaintiff further argues in its motion for partial summary judgment that it developed an IEP that was reasonably calculated to enable J.A. to receive meaningful educational benefit, in compliance with the requirements set forth in <u>Rowley</u>. In response, the defendants contend that the SCERTS method, which they argue does not meet the requirements of being a peer-reviewed research-based methodology, is insufficient to meet J.A.'s educational needs. The defendants focus on Dr. Butter's testimony, in which he recommended the ABA

using DTI method for J.A. and stated that the SCERTS method is not as effective.[10] Moreover, the defendants claim that the LEA team was not adequately trained in the SCERTS method and was unable to adequately explain the necessity of switching J.A. from ABA using DTI to the SCERTS model.

The Supreme Court has held that the IDEA's FAPE requirement is satisfied when the LEA demonstrates that it has developed an IEP "reasonably calculated to enable the child to receive some educational benefit." Rowley, 458 U.S. at 206. An IEP is reasonably calculated to confer educational benefit when it is "likely to produce progress, not regression or trivial education advancement." Houston Independent Sch. Dist. v. V.P. ex rel. Juan P., 582 F.3d 576, 583 (5th Cir. 2009). Only if the court finds that the LEA failed to offer a "basic floor of opportunity" may it conclude that the child was denied a FAPE. Rowley, 458 U.S. at 201. Thus, this Court must determine whether the IEP, at the time of its creation, was reasonably calculated to provide some educational benefit to J.A.

As explained above, the appropriate education required by the IDEA should not be confused with the best possible education. The LEA is not required to furnish every special service necessary to maximize a disable child's potential, nor must it comply with every

---

[10]Dr. Butter, however, did not observe J.A. at ALLC and did not review the IEP. (Hr'g Officer Findings of Fact at 9.)

16

parent demand to meet its obligations under the IDEA.  See MM, 303
F.3d at 526-27; Shaw, 238 F. Supp. 2d at 139.

The hearing officer concluded that the IEP offered by the LEA
does not provide a FAPE to J.A.  This Court gives due weight to the
administrative findings, but disagrees with that legal conclusion.
Rather than determining whether the IEP provided a satisfactory
education to J.A., in line with the requirements of the IDEA, the
hearing officer appears to have assessed whether the IEP would
replicate the benefit J.A. had received at ALLC.  However, the
quality of education that J.A. allegedly received while attending
ALLC has no bearing on whether the LEA's IEP passes muster under
the IDEA.  As long as the LEA set forth the proper elements of the
IEP, shows that the annual goals, benchmarks, and short-term
objectives set forth in the IEP were reasonable, and shows that the
methodology employed was tailored to meet those goals, benchmarks,
and objectives, then the BOE has sustained its burden of proof.
See Michael M., 95 F. Supp. 2d at 610.  Applying these guidelines
to the proof offered by the BOE in this case, it is clear that the
BOE has sustained its burden of proof.  The LEA sufficiently set
forth the statutorily required elements of an IEP, which provided
reasonable goals and objectives for J.A.  The BOE also offers
expert testimony in support of its argument that the methodology in
the IEP was reasonably tailored to accomplish those goals.

17

Every expert witness qualified in the fields of special education programming and autism instruction found that the IEP was designed to confer educational benefit upon J.A. consistent with the Rowley standard. At the hearing, Dr. Krieg testified that one of the primary areas in which J.A. would benefit educationally would be his integration with other students at an early age. (Hr'g Tr. 146, Feb. 18, 2009.) Dr. Krieg also stated his belief that the IEP was well thought out and catered to J.A.'s levels of performance. (Hr'g Tr. 143, Feb. 18, 2009.) Numerous other experts, including Suzanne Varner, Robert Bartlett, Cecilia Irvin, and Dr. Katherine Calabria testified that J.A. would receive educational benefit under the IEP. Dr. Calabria emphasized that the IEP was individualized and clearly lays out instructional goals. (Hr'g Tr. 204, Feb. 18, 2009.) Suzanne Varner testified that J.A. would receive one-on-one instruction using programming that allows him to be functional. (Hr'g Tr. 210, Feb. 17, 2009.) Even J.A.'s mother conceded that J.A. would benefit from attending Marshall County Schools. (Hr'g Tr. 53, Feb. 17, 2009.) The defendants may not prefer the SCERTS methodology, but they are unable to counter the experts' opinions that it is reasonably calculated to enable J.A. to receive some educational benefit. Neither the hearing officer nor this Court can supplant the role of the IEP and find that only one methodology is appropriate for the

student simply because it has worked in the past, especially when the alternative methodology has yet to be tried.

At the administrative hearing, several well-qualified experts testified on behalf of both parties with differing opinions about the SCERTS methodology specifically. The experts offered the "pros" and "cons" as to both the SCERTS method utilized by Park View Elementary School and the ABA method using DTI utilized by ALLC. For example, Mr. Bartlett described the flexibility of the SCERTS method, which allows for the use of other methodologies. (Hr'g Tr. 265, Feb. 17, 2009.) Mr. Barlett also stated that there is no proof that any one program is more effective than any other. (Hr'g Tr. 292, Feb. 17, 2009.) Further, if J.A. was not successful under the IEP, Barlett suggested that the IEP team would reconvene to add new goals or objectives. (Hr'g Tr. 304, Feb. 17, 2009.) However, Kathy Shapell, a professor in special education at West Liberty State College and Bethany College, testified that there is not enough peer-reviewed research to indicate that SCERTS is an effective teaching tool for autistic children. (Hr'g Tr. 28, Feb. 18, 2009.) Dr. Butter testified that he would prefer J.A. continue in an ABA program because of J.A.'s need for ongoing skill acquisition. (Hr'g Tr. 94, Feb. 18, 2009.)

This Court has considered all of the expert opinions presented at the hearing, and while acknowledging that it is possible for them to disagree, finds that the IEP offered by the plaintiff meets

the standards under the IDEA. Significantly, because J.A. has never attended the LEA's public school system, the statements of the experts who testified that J.A. would benefit educationally under the proposed IEP provide the only proof of the appropriateness of the IEP. See MM, 303 F.3d at 537-38 (instructing the hearing officer to rely on prospective expert testimony showing why [Extended School Year] services were necessary for the student).

This Court recognizes that the IDEA does not give it the right to "substitute [its] own notions of sound educational policy for those of local school authorities which [it] review[s]." Delullo v. Jefferson Cnty. Bd. of Educ., 71 F. Supp. 2d 554, 559 (N.D. W. Va. 1998). Nevertheless, after reviewing the record this Court concludes that a FAPE was provided to J.A. J.A.'s parents, as well as representatives from ALLC had the opportunity to contribute to the IEP, and they did not object to the IEP except as to the use of the SCERTS methodology.[11]

The hearing officer reasoned that the parents were entitled to reimbursement because the IEP team only observed J.A. at ALLC for approximately two hours, because there were lingering questions regarding the peer-reviewed status of the SCERTS methodology, and

---

[11]Although J.A.'s parents did not object to the IEP, other courts have concluded that failure to object to a child's placement does not deprive him of the right to a FAPE. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 250 (3d Cir. 1999).

because of the possibility that J.A. may regress upon his transition to Park View Elementary. The plaintiff contends that these reasons are without merit, whereas the defendants maintain that the IHO's decision was thorough, detailed, and provides sufficient explanation to permit this Court to affirm his ruling.

This Court first notes that the IDEA does not require an IEP team to observe a student for a certain number of hours in order to develop a satisfactory IEP. Instead, the IDEA requires that the IEP team consider certain factors, such as the child's strengths, the parents' concerns, the results of the initial evaluation, and the academic, developmental, and functional needs of the child. 20 U.S.C. § 1414(d)(3)(A)(i)-(iv). The record reveals that these factors were adequately considered by all parties involved in the hearing and that the LEA did, in fact, adopt numerous suggestions and recommendations of J.A.'s parents and ALLC. The hearing officer erred in finding that the length of the observation diminished the weight that should be given to the LEA proposals.

Although the defendants insist that the SCERTS program does not meet the federal standard as at teaching methodology based on peer-reviewed research, Dr. Calabria testified that the research supporting the ABA method is more limited than that supporting the SCERTS method. (Hr'g Tr. 231, Feb. 18, 2009.) Additionally, Dr. Calabria testified that the SCERTS method is qualified as an evidence-based comprehensive model based on the National Research

Council's recommendations. Even if the components of the SCERTS methodology were not peer-reviewed, the IDEA does not require the LEA to use only peer-reviewed methodologies. Thus, the hearing officer's determination that the SCERTS method had not been fully evaluated and his reliance on this as support for his determination that it is not effective is not justified. The IEP must include only a statement on "the special education and related services and supplementary aids and services, based on peer-reviewed research <u>to the extent practicable</u>, to be provided to the child." 20 U.S.C. § 1414(d)(1)(A)(IV) (emphasis added). This language does not prohibit the use of methodologies that are not peer-reviewed. <u>See Joshua A. v. Rocklin Unified Sch. Dist.</u>, No. CV 07-01057, 2008 WL 906243, at *3 (E.D. Cal. Mar. 31, 2008) ("It does not appear that Congress intended that the service with the greatest body of research be used in order to provide FAPE.").

Finally, turning to the IHO's third concern, this Court notes the conflicting opinions regarding the ease of J.A.'s transition from ABA using DTI to SCERTS. Although Dr. Krieg expressed concerns that J.A. would experience regression and negative effects from changing methods, Dr. Calabria testified that J.A.'s transition to Park View Elementary would likely be short and smooth. (Hr'g Tr. 246-47, Feb. 18, 2009.) Even if J.A. were to experience negative effects from changing methods of instruction,

this does not mean that the IEP fails to provide a satisfactory education to J.A.

Although it is possible for reasonable persons to debate the extent of the peer-review regarding each of the two autism teaching methods, this does not mean that the SCERTS method fails to meet the requirements of the IDEA. While the parents clearly prefer the ABA using DTI method, they have presented no evidence that the SCERTS method is inappropriate or would deprive J.A. of educational benefit. See Kerkam v. McKenzie, 862 F.2d 884, 886 (D.C. 1988) ("[P]roof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act."); Lachman v. Ill. Bd. of Educ., 852 F.2d 290, 296 (7th Cir. 1988) (holding that where a placement dispute is based on a disagreement about educational methodology, the school district and not the parents have primary responsibility for choosing the educational method most suitable to the child's needs). In fact, experts such as Suzanne Varner, Cecilia Irvin, and Dr. Krieg, who had observed J.A. at ALLC, and Dr. Calabria, who had reviewed J.A.'s records, seemed to display a solid understanding of J.A.'s educational needs and how to best meet them. (Hr'g Tr. 237, Feb. 18, 2009.) This Court finds that the record does not justify J.A.'s unilateral, private placement at ALLC simply because the instructional method employed may better maximize his abilities in his parent's view. This Court believes that J.A.'s parents in

particular, and all others involved in his treatment and education have demonstrated extraordinary interest in providing the appropriate attention to J.A.'s educational development.

Upon careful review and consideration of the administrative record and the parties' briefs, this Court finds that the Board has met its burden of proving that J.A.'s IEP was adequate under the IDEA. Thus, this Court must find that the parents are not entitled to reimbursement and partial summary judgment must be granted to the plaintiff, the Board of Education of the County of Marshall.

### V. Conclusion

For the reasons stated above, the plaintiff's motion for partial summary judgment is GRANTED. The defendants' counterclaim, however, remains pending and the parties shall proceed further to follow the amended scheduling order entered by this Court on February 10, 2011 (Docket No. 25).

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:     March 30, 2011


                                   /s/ Frederick P. Stamp, Jr.
                                   FREDERICK P. STAMP, JR.
                                   UNITED STATES DISTRICT JUDGE